THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. FÉLIX CASTRO ROSARIO, Defendant and Appellant.

No. CR-67-42.     Decided December 8, 1967.

*Pedro A. Otero Fernández* and *Octavio Malavé Torres* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

PER CURIAM: Appellant was found guilty of driving a motor vehicle along a public thoroughfare under the influence of intoxicating liquor. He was sentenced to 15 days in jail, and his driver's license was suspended for the period of one year.

On appeal he attacks the sufficiency of the evidence to support his conviction and also the penalty itself as excessive.

The evidence for the prosecution established that on October 8, 1966, policemen Marcos Andújar Pérez and Andrés Tolentino were patrolling in a vehicle not identified as being of the Police, a certain area of the Urbanización San José. At about 1:20 in the morning, while they were driving to-

wards López Sicardó Street of Urbanización Dos Pinos, they saw a 'pickup bus,' which was coming in the opposite direction, and invaded their lane upon taking a curve. They decided to follow it from a distance. The pickup bus was going at a speed of about 40 or 45 miles per hour, and took the curves irregularly. They stopped the pickup, and when they asked its driver, Félix Castro Rosario, for his license, he stated that he did not have it. He smelled of liquor, they arrested him and drove him to the police station, and later to the Medical Center of Barrio Obrero where they took his blood sample. Later he was taken to a magistrate, and there he showed his driver's license. Said magistrate found probable cause, and ordered the filing of an information for driving in a state of intoxication.

Policeman Marcos Andújar Pérez testified on these particulars. On direct examination he also testified that the defendant staggered, but not to the extreme of falling; that although he had never spoken to the defendant "he did not speak very clearly"; that while the investigation was taking place, the defendant observed a "negative conduct towards the police's request of his license"; that he told them not to speak to him loudly, not to scold him; that the defendant did not say obscene words.

On cross-examination, and when questioned by the judge, this policeman testified that at the police station the defendant identified himself as a policeman of the Criminal Investigation Corps; that the defendant was not driving correctly; that he did not zig-zag or stagger; that to the witness the defendant walked normally; "it was not that he was falling"; he was not stumbling; he went down the stairs; it was a second floor, he went down and up; that a smell of liquor was noticeable. The parties stipulated that the procedure followed to take the blood sample, and the one followed by the chemist in the analysis of said blood was normal and in

conformance to law. They also stipulated that the result of the analysis revealed a .21% by weight of alcohol.

The chemist Rafael Santiago Carmona testified for the defense. He said that on October 17, 1966, they gave him a blood sample, number 09715, and that same day he analyzed it and found it to have 0.13 by weight of alcohol; that the vial which contained the sample was covered but not sealed, and that it could be opened by twisting it. He also testified that the sample he analyzed did not contain water; that there are factors which can change the content of alcohol in a blood sample, among them that the vial be left opened or out of the refrigerator; that the samples which go to the Health Department are put immediately in the refrigerator, and he believes that there is no loss, "there is no difference between the two which are over there"; that there "can be loss in the one the defendant has, that if he leaves it out of the refrigerator even if it is well covered there is loss." He also testified that he cannot explain the difference between the results of the sample he analyzed, and the one analyzed by the chemist from the Department of Health.

The defendant's version, according to his own testimony, is to the effect that the police detained him when he was reaching the intersection of Felipe Gutiérrez and Simón Madera Streets; that policeman Tolentino asked him to alight and later punched him twice; that they drove him to the police station, and there he gave his license and his identification card; that they returned the latter to him but not the license. From the police station they took him to the Barrio Obrero Dispensary to take his blood sample, and from there to the Court of Investigation. He also testified that that evening he was making an investigation in Bus Stop 15, Monserrate Street, concerning a person who had died two weeks before; that he spoke to a *compadre* who did not know much about the matter; that later he entered a bar on Monserrate Street, at the corner of Carmen Street where people

of the underworld meet, and to justify his presence there he imbibed intoxicating liquor. "I took"—he says—"some four drinks of whiskey with soda." After finishing his investigations, he left for his house.

On cross-examination he testified that he did not file any complaint against policeman Tolentino.

The other witness for the defense, José Miguel Díaz Alamo, testified on the character of the defendant.

In finding the defendant guilty, the judge expressed himself thus:

"Judge:—

"The defendant may rise. Because of the results of the evidence, and considering all the testimonies given, including the one of our good friend Díaz Alamo, and giving the probative force which in our opinion the testimony of policeman Andújar deserves, in other words, it does not deserve in our opinion a one hundred percent value. I have the intimate conviction that he has tried to blow hot and cold; but, as a whole, from the evidence and the results of the analysis the court finds you guilty of a violation of the section of the Vehicle and Traffic Law, and it does not doubt at all that you were under the influence of intoxicating liquor that day. I do not believe that a policeman, and this I say boldly, I do not think that policeman Andújar, after learning that you were a police officer, would have insisted in taking you before a judge if all you had was a mere smell of liquor. There must have been something else which policeman Andújar forgot or did not wish to say; but there is a revealing fact, and that is the result of the analysis, to which the court gives complete credit as made by the chemist Gloria Circums, which reveals that you had a .21% of alcohol in the blood. It is not that I disbelieve chemist Carmona; but the chemist himself admits that it can be opened easily, and it is very volatile and it could have volatilized." (Tr. Ev. 47 and 48.)

■ The entirety of the evidence establishes the guilt of the defendant beyond a reasonable doubt. The result of the analysis of the blood sample taken from the defendant, which

revealed a .21% by weight of alcohol, was admitted in evidence for the prosecution by stipulation of the parties. The procedure followed to obtain the sample was not attacked, neither was the procedure followed for its analysis and much less its result. That fact establishes the presumption that the defendant was under the influence of intoxicating liquor at the time he committed the violation. Section 5-801 (a) (3) of the Vehicle and Traffic Law of Puerto Rico (9 L.P.R.A. § 1041). That presumption is corroborated by other evidence in the record, such as the defendant's irregular manner of driving his motor vehicle, that the defendant "staggered but not to the extreme of falling," "he did not speak very clearly, and smelled of liquor," also of his own confession that a little after six in the evening he entered a bar where he took some four drinks of whiskey with soda.

On the other hand, as to the result of the blood sample analyzed by chemist Rafael Santiago Carmona, there is nothing in the record to indicate that that sample was, when analyzed by said chemist, in the same condition as when it was given to the defendant, or that it was conserved by the latter in such a manner that the content of alcohol in the blood was not changed by the lapse of time.

The discrepancy between the results of both analyses presented in evidence does not create by itself a reasonable doubt as to the state of the defendant, nor does it give grounds for his acquittal. *People* v. *Nuñez Toledo*, 92 P.R.R. 686 (1965).

■ Now then, even though the penalty imposed on the defendant falls within the limits assigned by the law, we consider that, under the attendant circumstances, it should be changed imposing on defendant the fine of $100 or one day in jail for each dollar he fails to pay, the subsidiary imprisonment must not exceed 90 days in jail.

Thus the judgment appealed from will be modified and as thus modified, it will be affirmed.

Mr. Chief Justice Negrón Fernández and Mr. Justice Belaval did not participate herein.